LOBRANO, Judge.
The Civil Service Commission and the City of New Orleans (appellants) seek reversal of the trial court’s judgment in this class action suit.
Plaintiffs are employees of the New Orleans Fire Department. They filed suit on their own behalf and as representatives of a class identified as fire alarm operators, dispatchers and fire inspectors seeking compensation pursuant to La.R.S. 33:1992, and back pay for a period of three years.
The trial court held that the plaintiffs are “... entitled to adjustment of their monthly salaries in compliance with the pay ranges and schedules established by La.R. S. 33:1992 in such a manner that each class member will receive the statutory increase relative to the corresponding firefighters pay range and pay step under the Civil Service Pay Plan.” (emphasis added) The trial court also ordered that plaintiffs were entitled to back pay under this formula, plus legal interest, for a period of three years. The City was ordered to make the necessary adjustments to the monthly pension benefits for retired class members.
Appellants argue the impropriety of the class certification, the trial court error in classifying the plaintiffs as firemen and the trial court’s misinterpretation of La.R.S. 33:1992.
Appellees argue that the pay differentials established in La.R.S. 33:1992 are binding on the Civil Service Commission and the City. They cite various cases in support thereof, including New Orleans Firefighters v. Civil Service Commission of New Orleans, 422 So.2d 402 (La.1982).
We determine the dispositive issue in this appeal is whether the trial judge’s application of La.R.S. 33:1992 violates the constitutional authority to adopt a uniform pay plan granted the Civil Service Commission in Article 10, Section 10 of the Louisiana Constitution.
La.R.S. 33:1992, entitled “Minimum Wages”, provides in pertinent part:
“A. The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, including salaries payable out of the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule, and such salaries shall be paid semi-monthly not later than the fifth and twentieth day of each calendar month:
(1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.
* * * # * *
(9) A fire alarm operator or dispatcher, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(10) A fire inspector shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.”
The trial court applied the above statute to the civil service’s pay plan schedule, the net effect being that the operators and inspector’s pay will be 25% above the city’s pay for firemen in a like category. For example, a firefighter I under the City’s plan receives a salary of $1,625.00 per month. *676 According to the trial court’s judgment, the equivalent operator, dispatcher, or inspector would be entitled to a salary of 25% above that amount, or $2,031.25. For the following reasons, we disagree with the trial court and reverse.
The Louisiana Constitution of 1974 reserves unto the legislature its plenary power to provide for minimum wages and working conditions of firemen. La. Const. Art. 6, Sec. 14;[1] New Orleans Firefighters v. Civil Service Commission of New Orleans, supra. This power is not in conflict with, nor diminished by the authority granted the Civil Service Commission in Article 10, Sec. 10(A)(1) of the Constitution to adopt a uniform pay plan.[2] New Orleans Firefighters, supra. Our Supreme Court, in New Orleans Firefighters, reaffirmed the Civil Service Commission’s constitutional authority “to make rules for the administration and regulation of the merit system of classified civil service, including the power to adopt a uniform pay plan and classification plan.” Id. at 409, (emphasis added). Thus, it is clear that the exclusive authority to adopt a uniform pay plan for firemen is vested with the City Civil Service Commission. That authority is limited only by the legislature’s plenary authority to provide for minimum wages and working conditions.
The legislature, by adopting La.R.S. 33:1992 did provide for minimum salaries of firemen, fire alarm operators, inspectors and dispatchers. The wage schedule set forth in that statute must be combined with the state supplemental pay (La.R.S. 33:2002) to determine the minimum amount that must be paid. New Orleans Firefighters, supra. Clearly appellees have been paid well in excess of those minimum amounts. However, they urge that R.S. 33:1992 requires that they receive 25% more than a comparable fireman. They rely on New Orleans Firefighters, supra, Hemphill v. City of Bogalusa, 417 So.2d 462 (La.App. 1st Cir.1982); Ruby v. City of Shreveport, 427 So.2d 1267 (La.App. 2nd Cir.1983), writ denied; Turner v. City of Shreveport, 437 So.2d 961 (La.App. 2nd Cir.1983), and Achord v. City of Baton Rouge, 489 So.2d 1373 (La.App. 1st Cir.1986), writs denied 493 So.2d 641, cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).
As noted previously, New Orleans Firefighters held that state supplemental pay must be considered as part of the minimum wages of firemen for purposes of determining overtime pay. The court recognized the exclusive authority of the Civil Service Commission to adopt a uniform pay plan that is not inconsistent or in conflict with the State’s power to provide for minimum wages. The holding of that case does not support a conclusion that appellants must pay appellees 25% more than that actually paid firemen.
In Hemphill, supra, the First Circuit held that state supplemental pay for firemen was considered part of their salary and must be used in computing the pay differentials between different ranking firefighters. Those pay differentials, however, were established by contract between the City of Bogalusa and the firemen’s union, and, as noted by the court, were in line with the differentials set out in R.S. 33:1992. Thus, the court’s holding that the “differentials are to be applied to the minimum salary actually paid” was based on the contract provisions. Hemphill is distinguishable from the instant case for that *677 reason. That is, appellees’ claim in this case is based solely on the language of R.S. 38:1992 and not a contract with the City.
In Ruby, supra, the Second Circuit held that the home rule charter of Shreveport must yield to the state’s plenary power to legislate minimum wages, working conditions, and retirement benefits for municipal policemen, and thus a cause of action was stated for overtime pay. The court recognized that La.R.S. 33:2213 was the legislative expression of minimum working conditions (i.e. overtime hours and pay) and that the City of Shreveport must conform to that statute. We do not consider this holding as supportive of appellee’s position. It is consistent, however, with the principle that the legislature has the authority to establish minimum wages and working conditions.
The holding of Turner, supra suggests a similar conclusion. In that case, the issue was whether the City of Shreveport had complied with the longevity pay increases mandated by La.R.S. 33:1992(B).[3] The court concluded that the “base pay” upon which the percentage increases were computed, included state supplemental pay. The holding expressly recognizes that the legislature, by Act 219 of 1956, amended the minimum wage law for firemen by including a mandatory salary increase for longevity. Again, this is consistent with the legislature’s plenary authority to regulate minimum wages. And, we specifically note that subsection “B” expressly provides that the percentage increases are computed on a fireman’s base pay, and not the minimum pay set forth in section “A”.
Finally, Achord v. City of Baton Rouge, supra, presented the issue of whether the trial court erred in refusing to consider hourly wages in determining whether the salary of dispatchers was at least twenty-five percent above that of firefighters. Apparently there was no argument made by the defendants concerning the City’s right to establish a uniform pay plan, and whether La.R.S. 33:1992 establishes a minimum wage only. Thus, the holding in the case assumes that dispatchers are entitled to receive 25% more than the pay received by firemen. We believe that assumption is incorrect, and therefore respectfully disagree with our brethren of the First Circuit.
We interpret R.S. 33:1992(A)(9) and (10) to mean that the minimum wage of a fire alarm dispatcher or operator, and the minimum wage of an inspector must be twenty-five percent above the state-required minimum wage of a fireman. By stating that minimum wages shall be “not less than twenty five percent above that of a fireman,” we believe the legislature intended the phrase “that of a fireman” to mean the minimum wage of a fireman, as set forth in the statute, not the wage he actually receives. Any other interpretation would require the City to automatically raise the pay of every dispatcher, fire alarm operator and inspector each time a fireman’s salary was raised. We do not believe this was the legislature’s intent.
To interpret the statute as appellees argue would render it unconstitutional. It is well settled that the constitution of our state is not a grant of power, but is a limitation on the otherwise plenary power of the people. Board of Commissioners v. Department of Natural Resources, 496 So.2d 281 (La.1986). Article 6, Section 14 limits the legislature’s power with respect to wages of political subdivision employees, except the minimum wages of policemen and firemen. Article 10, Section 1 creates the City Civil Service, and section 10(A)(1) enumerates its powers, which includes the authority to adopt a uniform pay plan. La. R.S. 33:1992 is the legislative expression of what minimum salaries must be for fire department personnel. The sole purpose of that statute is to establish a statewide floor *678 under wages and a ceiling over hours. New Orleans Firefighters, supra. In passing that statute the legislature did not intend to, nor can it constitutionally, usurp the authority of the Civil Service Commission in adopting a pay plan. And, the only limitation on the Commission is its required adherence to minimum pay. The evidence is clear that plaintiffs are receiving substantially more than the minimum pay. Thus the trial court’s interpretation of La. R.S. 33:1992 is tantamount to a legislative increase in civil service employees’ wages in violation of Article 6, Sec. 14 of our constitution.
We therefore reverse the trial court’s judgment and dismiss plaintiffs’ suit at their costs.
REVERSED AND RENDERED.
BARRY and ARMSTRONG, JJ., dissent with reasons.

. Article 6, Sec. 14 provides:
“No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates the funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board." (emphasis added).

. Article 10, Sec. 10(A)(1) provides, in part:
"Each commission is vested with broad and general rulemaking and subpoena powers ... including the power ... to adopt a uniform pay and classification plan....”

. R.S. 33:1992(B) provides:
B. From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay.