Dear Mr. Tassin:
You have submitted questions to this office concerning the legality of proposed rules and regulations to be adopted by the St. Tammany Fire Protection District No. 4 ("the district"). We address your questions below, as restated from your correspondence.
 I. Can the fire district pay recruit firefighters an amount equal to the state supplemental pay ($300.00 per month) during their first year (for their first 12 months maximum) out of the fire district's operating budget and not be required to pay all other firefighters whom currently receive state supplemental pay?
First, note that R.S. 33:1992 mandates minimum salaries, starting with "a fireman." An individual holding that position receives the lowest pay of all the ranks. All the differentials are based on a percentage above that of "a fireman." R.S. 33:1992(A)(1) provides:
 Minimum salaries
 A. The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, including salaries payable out of the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule, and such salaries shall be paid *Page 2 
semi-monthly not later than the fifth and twentieth day of each calendar month:
 (1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.[1]
Addressing the pay differentials in R.S. 33:1992, the court in Hemphillvs. City of Bogalusa, 417 So.2d 462 (La.App. 1st Cir. 1982) stated:
 Even though the percentage differentials are for minimum salaries, the differentials are applicable from the minimum actually paid *Page 3 
firemen by the municipality where that minimum exceeds the $400.00 minimum established by the statute. The statute clearly intends to establish percentage differentials between the minimum wages of different classes of firefighters. If the percentage differential were applied only to the $400.00 figure of R.S. 33:1992(1), which has not been amended since 1969, clearly in every fire department in the state the differential would be eliminated by the increase of the minimum salary paid firemen. Hemphill, supra, at page 465. (Emphasis added).
The court in Hemphill, at page 465, specifically states "the minimum salary actually paid is the correct base". As applied in the instant matter, if the fire district pays first-year firemen an additional $300.00 per month the minimum salary actually paid is increased.
Thus, in response to your first question, the pay differentialsare affected by the additional amount paid by the fire district, and the salaries of the other firefighters would be augmented as a result.[2]
The fire district's plan to terminate the salary supplement when the firefighter starts receiving state supplemental pay under R.S. 33:2002
violates R.S. 33:2005, providing:
 2005 Salary reductions; void
 Any reduction of the salary of any employee covered by this Subpart, which is in effect on July 1, 1979, whether by the governing authority or by any pay plan under the provisions of any civil service law, or otherwise, shall be void where it is made solely by reason of the additional compensation by the state, provided for in this Subpart. Any appropriation made by the legislature which results in a salary adjustment to the state supplemental pay program under this Subpart shall not have the effect of reducing or replacing any base salary or benefits paid by the local governing authority from other revenue sources. (Emphasis added).
Based upon the language of R.S. 33:2005 quoted above, and in further response to your first question, the district may not reduce a firefighter's salary when it is done "solely be reason of the additional compensation by the state." The fire district's plan to pay "for their first 12 months maximum" contravenes R.S. 33:2005, as the salary supplement will terminate when the firefighter states *Page 4 
receiving state supplemental pay. As discussed above, the salary supplement paid by the district is part of the firefighter's base pay.
Because your second and third question address the same subject matter, we have consolidated same within question II, below.
 II. If the fire district mandates that firefighters hired after a certain become paramedics or hazmat technicians or must obtain similar certifications as part of their employment, must the fire district pay overtime compensation for certification obtained during off-duty hours? May the fire district pay overtime compensation to employees who are not firefighters who voluntarily obtain paramedic and hazmat certifications where such certifications are not a requirement of employment?
Both of these questions relate to the application of federal law. The Fair Labor Standards Act (FLSA) generally provides that each employer must pay its employees one and one-half times the employee's regular rate for all hours worked in any workweek in excess of 40 hours. See29 U.S.C. § 207(a). The FLSA provides a partial exemption for municipalities that employ firefighters. See 29 U.S.C. § 207(K);29 C.F.R. § 553.201(a). Further, federal regulations set out the calculation for compensable hours of work for firefighters. See29 C.F.R. § 553.221.
It is the policy of this office to decline to give opinions on the application of federal law. However, you may obtain an official opinion letter addressing your questions from the U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division, Frances Perkins Building, 200 Constitution Avenue, NW, Washington, DC 20210 (1-877-889-5627).
Further, you will also find current opinion letters on the U.S. Department of Labor website. The link ishttp://www.dol.gov/esa/whd/opinion/opinion.htm.
 III. If an employee is over paid due to a time sheet or clerical error will the fire district be in violation of any state or federal law if the fire district deducts the overpayment from an employee who does not voluntary authorized in writing approval to allow the deduction?
In response to your third question, while R.S. 42:460 concerning recoupment of overpayments pertains to state employees, the statute should be used as a guideline for local agencies to recoup overpayments. R.S. 42:460 states:
 Recoupment of overpayments; establishment of rules *Page 5 
The division of administration shall have the power to promulgate rules and regulations necessary to provide state agencies with the ability to recoup overpayments made to state employees. Such recoupments shall include but not be limited to overpayment of wages paid to employees and erroneous refunds of deductions withheld from employees.
R.S. 42:460 makes no reference to authorization by an employee. Recoupment of an overpayment is distinguishable from those payroll deductions contemplated by R.S. 42:456 which do require prior authorization by an employee.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
R.S. 33:2002 states:
Extra compensation
A. (1) In addition to the compensation now paid by any municipality, parish, fire protection district, or other political subdivision maintaining a fire department, or by the Chitimacha Tribe of Louisiana or the Coushatta Indian Tribe of Louisiana, hereinafter referred to as "tribe", or by any nonprofit corporation contracting with any such political subdivision to provide fire protection services to every paid, regularly employed employee who is paid not less than three hundred dollars per month, not including supplemental pay, as distinguished from part-time employees and volunteers of such fire department, who are carried on the payroll of such fire department, and every employee as defined herein who is paid from funds of the parish or municipality or tribe obtained through lawfully adopted bond issues, lawfully assessed taxes, or other funds available for such purpose, either directly or through a board or commission set up by law or ordinance of the parish or municipality or tribe, shall be paid extra compensation by the state in the amount of four hundred twenty-five dollars per month for each such paid employee who has completed or who hereafter completes one year of service.
(2) The term "employee" as used herein expressly excludes any person hired primarily to perform secretarial and clerical duties, switchboard operators, secretaries, record clerks, maintenance personnel, and mechanics; it shall expressly exclude employees hired after March 31, 1986, who have not completed and *Page 6 
passed a certified fireman's training program equal to National Fired Protection Association Standard 1001 Firefighter I Certification or a firemen's training program as approved by the Louisiana State University
Firemen Training Program in accordance with R.S. 40:1541 et seq.; and it shall also expressly exclude part-time employees and volunteers of such municipal, parish, tribe, or fire protection district fire departments.
(3)(a) A municipality, parish, fire protection district, or other political subdivision maintaining a fire department, or the Chitimacha Tribe of Louisiana or the Coushatta Indian Tribe of Louisiana, or any nonprofit corporation contracting with any such political subdivision to provide fire protection services may enhance the first-year salary of every paid, regularly employed employee in the amount equivalent to the state supplemental pay, or any portion thereof, that the employee shall be entitled to be paid after one year of service pursuant to this Subpart.
(b) Any such municipality, parish, fire protection district, or other political subdivision maintaining a fire department, or the Chitimacha Tribe of Louisiana or the Coushatta Indian Tribe of Louisiana, or nonprofit corporation contracting to provide fire protection services shall disclose, in writing, at the time the employee is hired that such enhancement shall be paid only during the first year of employment.
(c) Notwithstanding any other provision of law to the contrary, no municipality, parish, fire district, or other political subdivision maintaining a fire department, or the Chitimacha Tribe of Louisiana or the Coushatta Indian Tribe of Louisiana, or any such nonprofit corporation contracting to provide fire protection services, shall be subject to penalty for reducing the salary of any employee whose salary has be enhanced pursuant to this Paragraph for one year by an amount not exceeding the amount of such enhancement. Any such reduction shall not be void as provided in R.S. 33:2218.5. *Page 1 
 ATTACHMENT
Westlaw.
417 So.2d 462
 417 So.2d 462
(Cite as: 417 So.2d 462)
 C
Hemphill v. City of Bogalusa
La.App. 1 Cir.,1982.
 Court of Appeal of Louisiana, First Circuit. Michael HEMPHILL and Bogalusa Professional Firefighters Association, Local No. IAFF 687, et al. v. The CITY OF BOGALUSA, Louisiana. No. 14968. June 29, 1982.
Firemen brought suit against city to have their state supplement pay included within computation of certain pay differentials and to gain enforcement of an addendum to their labor contract. The Twenty-Second Judicial District Court, Parish of Washington, Hillary J. Crain, J., entered judgment for firemen on the issue of state supplement pay, but found against firemen on the addendum issue, and the firemen appealed. The Court of Appeal, Shortess, J., held that: (1) the state supplemental pay was subject to being considered part of the "salary" to be given firemen and was to be used in computing the pay differentials which were required by the labor contract with the city to be maintained among the different ranks of firemen, and (2) addendum which was made to the labor contract between the city and the fire fighters and which was to effect that a pay raise would be granted to the fire fighters if the city were to grant a pay raise to any other city employee was not legally effective and, hence, was not subject to being enforced where it was never ratified by ordinance of the city.
Affirmed.
West Headnotes
[1] Municipal Corporations 268 199
268 Municipal Corporations
268V Officers, Agents, and Employees
268V(B) Municipal Departments and Officers Thereof
268k 193 Fire
 268k 199 k. Pay and Other Compensation. Most Cited Cases *Page 2 
State supplemental pay was subject to being considered part of the "salary" to be given firemen and was to be used in computing the pay differentials which were required by the labor contract with the city to be maintained among the different ranks of firemen. LSA-R.S. 33:2002,33:2004, subd. D.
[2] Municipal Corporations 268 199
268 Municipal Corporations
268V Officers, Agents, and Employees
268V(B) Municipal Departments and Officers Thereof
268k 193 Fire
268k 199 k. Pay and Other Compensation. Most Cited Cases
The pay differentials which were required by the labor contract with the city to be maintained among the different ranks of firemen were to be applied to the minimum salary actually paid rather than to the $400 per month minimum salary provided by the statute since, if the percentage differential were applied only to the $400 figure, the differential would be eliminated by the increase of the minimum salary paid firemen. LSA-R.S. 33:2002, 33:2004, subd. D.
[3] Municipal Corporations 268 199
268 Municipal Corporations
268V Officers, Agents, and Employees
268V(B) Municipal Departments and Officers Thereof
268k 193 Fire
268k 199 k. Pay and Other Compensation. Most Cited Cases
The term "highest Firefighter," within statute requiring that salaries which were out of line were to be adjusted upward so as to allow a fire driver 15% above the highest fire fighter, a fire captain 25% above the highest fire fighter, and an assistant chief 50% above the highest fire fighter was correctly interpreted as an attempt to provide differentials between the highest ranked fire fighter and the next rank, driver, and as providing a 15% pay differential between the three-year fire fighter and the fire driver. LSA-R.S. 33:2002, 33:2004, subd. D.
[4] Municipal Corporations 268 199
268 Municipal Corporations
268V Officers, Agents, and Employees
268V(B) Municipal Departments and Officers Thereof
 268k 193 Fire *Page 3 
268k 199 k. Pay and Other Compensation. Most Cited Cases
Addendum which was made to the labor contract between the city and the fire fighters and which was to effect that a pay raise would be granted to the fire fighters if the city were to grant a pay raise to any other city employee was not legally effective and, hence, was not subject to being enforced where it was never ratified by ordinance of the city. LSA-R.S. 33:2002, 33:2004, subd. D.
[5] Municipal Corporations 268 199
268 Municipal Corporations
268V Officers, Agents, and Employees
268V(B) Municipal Departments and Officers Thereof
268k 193 Fire
268k 199 k. Pay and Other Compensation. Most Cited Cases
Firemen, whose suit against city to have their state supplement pay included within computation of certain pay differentials was filed on July 18, 1980, were entitled to back pay on the differential issue for one year prior to the date their suit was filed. LSA-R.S. 33:2002,33:2004, subd. D.
*463 Dale E. Branch, Bogalusa, for plaintiffs.
John N. Gallaspy, Bogalusa, for defendant-appellant.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
SHORTESS, Judge.
The Bogalusa Firefighters Association, Local 687 (plaintiffs-appellees) filed suit against the City of Bogalusa (defendant-appellant) seeking to have their state supplement pay included within the computation of certain pay differentials. They further sought enforcement of an addendum to their labor contract, which provided that if any City employee received a raise, the firemen would also receive same.
The trial judge found in favor of plaintiffs on the pay differential issue, but held that the addendum had never become legally effective, because it had not been ratified by the City Council, as required by the Bogalusa City Charter. From this judgment,*464 the City appeals, alleging the trial judge was incorrect in concluding that the State supplement was part of a fireman's salary and also in holding that the differential percentages should be applied to the minimum actually paid the highest ranked firefighter. Plaintiffs answered the appeal maintaining that the trial court erred in not enforcing the addendum to their contract. *Page 4 
 ISSUE ONE
The first issue is whether the State supplemental pay should be considered part of the "salary" of a fireman and be used in computing the pay differentials outlined for the different ranks in the Firefighters Association.
[1] The City and the firemen entered into a labor contract on August 21, 1978, which requires that pay differentials be maintained among the different ranks of firemen; namely, firefighters, drivers, captains, and assistant chiefs. The contract basically tracks the provisions set forth in La.R.S. 33:1992FN1, and indicates that the percentage differentials listed in the contract were to be kept in accord with those in the statute. La.R.S. 33:1992, entitled, "Minimum salaries," provides in pertinent part:
 FN1. The rank of driver in the Bogalusa system is the equivalent of the rank of lieutenant as listed in La.R.S. 33:1992.
The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, . . . shall be paid in accordance with the following schedule, . . .:
(1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.
(2) Engineers shall receive a minimum monthly salary of not less than ten percent above that of a fireman.
(3) Lieutenants shall receive a minimum monthly salary of not less than fifteen percent above that of a fireman.
(4) Captains shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(5) Battalion chiefs and district chiefs shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(6) Assistant chiefs and deputy chiefs shall receive a minimum monthly salary of not less than fifty percent above that of a fireman.
The statute further provides for differentials among various other ranks and then states:From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay. *Page 5 
The basis of the State supplemental pay is found in La.R.S. 33:2002:
In addition to compensation now paid by any municipality, parish, or fire protection district maintaining a fire department to any employee of such department (the employee) . . . shall be paid extra compensation by the State. . . .
and La.R.S. 33:2004(D) states:The additional compensation paid by the state to municipal or parish fire department employees as provided by this Sub-Part shall be included in the calculation and computation of the total wages paid to the employee in the determination of employer contributions to any retirement system or pension fund of which such employee may be a member as well as in the determination of retirement eligibility and benefits which may accrue to the employee under any retirement system or pension fund, as well as in the determination of any other employee benefits, sick leave, or disability pay to which the employee might be entitled.
*465 We agree with the trial judge that this statutory language "clearly indicates that the State supplement is to be considered a part of the total salary," of a fireman.
Mrs. Carolyn Miller, the payroll computer operator for the City, testified that the State supplement checks are sent to the various departments of City employees and then disbursed to the firemen. She stated that the City withholds pension and withholding tax from the State supplement; that the supplement is used in computing retirement benefits, income tax benefits, and overtime pay; and that the supplement is used determining the 2% annual raise, provided in R.S. 33:1992.
In Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La. 1975), the Supreme Court held that the State supplemental pay was part of the salary due to a fireman who was reinstated after an illegal discharge.
We find that the State supplemental pay is part of a fireman's salary for purposes of determining pay differentials.
[2] A secondary question concerns how the differential percentages are to be applied. The City argues that the differentials should be applied to the $400.00 per month minimum salary, provided in La.R.S. 33:1992. Its language has not been changed since its effective date in 1969. In most cases, it no longer represents the minimum salary actually paid a fireman.
The trial judge stated:
Even though the percentage differentials are for minimum salaries, the differentials are applicable from the minimum actually paid firemen by the municipality where that minimum *Page 6 
exceeds the $400.00 minimum established by the statute. The statute clearly intends to establish percentage differentials between the minimum wages of different classes of firefighters. If the percentage differential were applied only to the $400.00 figure of R.S. 33:1992(1), which has not been amended since 1969, clearly in every fire department in the state the differential would be eliminated by the increase of the minimum salary paid firemen.
The minimum salary actually paid is the correct base. We find this conclusion in accord with the intent of the statute, and support the trial judge's determination.
The contract provides for the minimum salary of firefighters in seven different classifications, the highest being a firefighter with three years' service. The rank ahead of a firefighter with three years' service is driver. In an effort to keep the contract in line with the percentages outlined in La.R.S. 33:1992, the contract states: If the span between ranks develops in such a manner to be out of line with the percentages set forth in the Fire and Police Civil Service Law, the salaries which are out of line will be adjusted upward to bring them in line: (a) Fire Driver: 15% above the highest Firefighter; (b) Fire Captain: 25% above the highest Firefighter; and (c) Assistant Chief: 50% above the highest Firefighter. (Emphasis ours.)
[3] The trial judge interpreted the language, "highest Firefighter," as an attempt in the contract to provide differentials between the highest ranked firefighter (firefighter No. 7) and the next rank, driver. This construction is consistent with the intent to keep the percentages in line with La.R.S. 33:1992. The result is a pay differential between the three-year firefighter and the fire driver of 15%, as the statute and the contract provide. Without this interpretation, a three-year firefighter might have a salary closely equivalent or exceeding that of a driver.FN2
This obviously was not the intent of the statute or the contract.
 FN2. See appendix.
We agree with the trial judge that the State supplement is part of the "salary" of a fireman, and further, that the differentials are to be applied to the minimum salary actually paid to the highest ranked firefighter.
 ISSUE TWO *Page 7 
The second issue is the legal effect of the addendum to the labor contract between *466 the City and firefighters. The addendum was signed by Michael Hemphill, President of the Local, and by the Mayor of Bogalusa, on July 31, 1979. It provides in pertinent part: The parties to the above agreement hereby agree to amend the terms of said agreement to provide the following:
ARTICLE XXVI-PAY EQUALIZATION:
If the Employer were to grant a pay raise to any other City employee, said pay raise will be granted to members of Bogalusa Firefighters Local 687.
[4] The trial judge, in his well-reasoned opinion, decided that the addendum had not become legally effective, because it was never ratified by ordinance of the City Council, as required under the Bogalusa City Charter. We have reviewed the evidence on this issue, and find that the trial judge was correct in his analysis. Accordingly, we adopt his written reasons on this issue:
 "PAY EQUALIZATION
All parties apparently agree that although the contract between the City and Firemen was to expire in July of 1979, the financial condition of the City was such that the Locals were in agreement that the present contracts would be extended. It is the contention of the Firemen's Local that the Pay Equalization provision was their consideration for not re-opening bargaining, and continuing to operate under the 1978 contract. In fact, it is the contention of the Firemen, although denied by the Mayor, that notice of termination of the 1978 contract was actually given and acknowledged before the addendum was agreed upon. In any event the testimony is uniform that the addendum was not discussed with the City Council, and the record reflects that no ordinance was ever adopted by the council authorizing or ratifying the addendum. The threshold question, therefore, is whether the addendum was ever legally effective. The City of Bogalusa operates under a Mayor-Council form of Government which became effective on December 4, 1978. Section 7-05 of the City Charter is decisive of the issue presented. That section provides as follows: `Section 7-05. Employee Representation
A. The right of the City employees to be represented by union organizations for the purpose of collective bargaining with refereence (sic) to compensation or working conditions is hereby recognized.
B. Any negotiations by the City with any such employee union representative shall be by the mayor or his designee. Final approval of any labor contracts with municipal employees shall rest with the council and shall be by ordinance.' *Page 8 
The addendum executed July 31, 1979 by the Mayor and the President of Local No. 687 is an amendment to an existing labor contract. It purports to make a substantial change in the original contract, granting firefighters a raise if any city employee is raised, where the original contract provided a firefighter's raise only if a departmental raise was given another city department. It therefore falls within the purview of Section 7-05(b)., and has never become operative because it has not been approved by the Council by ordinance."
 ISSUE THREE
[5] Our decision awards back pay to plaintiffs. The law regarding the firemen's receipt of back pay is set forth in DeVillier v. City ofOpelousas, 247 So.2d 412 (La.App. 3d Cir. 1971). Plaintiffs' suit was filed on July 18, 1980. They are entitled to back pay on the differential issue for one year prior to the date their suit was filed.
For all the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant.
AFFIRMED.
 APPENDIX
The following is that section of the contract between the City and the firefighters *467 which is pertinent to the pay differential issue:
 "EXHIBIT B
It is agreed between the employer and the union that eligible employees shall be classified into pay grades as shown on the following schedule, and shall receive not less that the pay indicated thereon. The annual pay increases shown hereon are inclusive of the 2% per annum increase required by law (R.S. 33:1992).
Exhibit
[1] The remaining portion of R.S. 33:1992 contemplates pay differentials between salaries as rank increases and provides: Minimum salaries
A. The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, including salaries payable out of the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule, and such salaries shall be paid semi-monthly not later than the fifth and twentieth day of each calendar month:
(1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.
(2) Engineers shall receive a minimum salary of not less than ten percent above that of a fireman.
(3) Lieutenants shall receive a minimum monthly salary of not less than fifteen percent above that of a fireman.
(4) Captains shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(5) Battalion chiefs and district chiefs shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(6) Assistant chiefs and deputy chiefs shall receive a minimum monthly salary of not less than fifty percent of that above a fireman.
(7) A mechanic or assistant mechanic, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that or a fireman.
(8) A superintendent of fire alarm system, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(9) A fire alarm operator or dispatcher, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(10) A fire inspector shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(11) For the city of Shreveport only, the provisions of R.S. 33:1992(9) shall apply only to present employees of the city of Shreveport Fire Department and shall not be applicable to any person employed by the city of Shreveport Fire Department after September 1, 1986.
(12) The provisions of R.S. 33:1992(A) (9) shall not be applicable to any person employed by the city of Morgan City.
B. From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay.
C. This Section will go into effect January 1, 1969.
D. Notwithstanding any other law to the contrary, Paragraph (A)(9) of this Section, as such Paragraph exists on April 1, 2001, shall apply to the fire department of any incorporated city with a population of not less than two hundred thousand and not more than two hundred twenty-five thousand persons as of the latest federal decennial census.
[2] That part of your question concerning equal protection issues is therefore moot.